UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

David John Gherity, *et al.*,

                Plaintiffs,

v.

Jeffrey Pfaff, *et al.*,

                Defendants.

Civ. No. 16-842 (RHK/SER)
**MEMORANDUM OPINION AND ORDER**

---

Paul Egtvedt, Egtvedt Law Firm, P.L.C., Minneapolis, Minnesota, for Plaintiffs.

Helen R. Brosnahan, Dakota County Attorney's Office, Hastings, Minnesota, for Defendants James Backstrom, Dakota County, and Dakota County Attorney's Office.

Sarah E. Hargadon, Hennepin County Attorney's Office, Minneapolis, Minnesota, for Defendant Hennepin Healthcare System, Inc.

---

## INTRODUCTION

This action arises out of a February 2014 fire at the apartment shared by Plaintiffs David Gherity and Joan Isabella in Burnsville, Minnesota. Isabella was injured and transferred for treatment to Hennepin Healthcare System, Inc., d/b/a Hennepin County Medical Center ("HCMC"). Once there, however, HCMC officials denied Gherity any access to (or information about) her; he was later charged by the Dakota County Attorney's Office with having started the fire and assaulting Isabella. After those charges were dropped, Gherity and Isabella commenced the instant action, asserting a slew of constitutional claims against the City of Burnsville and the Burnsville police officers involved in the matter; Dakota County, the Dakota County Attorney's Office, and James

Backstrom, the Dakota County Attorney (collectively, the "Dakota County Defendants"); and HCMC. Presently before the Court are Motions to Dismiss by the Dakota County Defendants[1] and HCMC. For the reasons that follow, the Motions will be granted.

## BACKGROUND

The Amended Complaint alleges the following facts. On February 9, 2014, Gherity and Isabella, who had been dating for the prior ten years, were living together in an apartment in Burnsville. (Am. Compl. ¶ 15.) That morning, Gherity left for work while Isabella remained at the apartment to clean. (Id. ¶ 16.) She consumed alcohol and smoked throughout the day; eventually her blood-alcohol level reached 0.27 and she accidentally started a fire in the apartment, severely burning herself. (Id. ¶¶ 17-18.) Responding paramedics found her sitting on a sofa in heavy smoke, holding a coffee mug; she was in shock, confused, and struggled to follow commands. (Id. ¶¶ 19-20.) She was transported to HCMC for treatment. (Id. ¶ 23.)

Gherity did not learn of the fire until later that evening, when he returned to the apartment from work. (Id. ¶ 27.) He called HCMC and spoke to "staff" about Isabella's condition, then went to see her. (Id. ¶ 31.) Once there, he provided medical information to the hospital about Isabella, but staff "decided [he] was 'weird and kinda creepy' and had a 'bad feeling' about him," and he was told he was barred from the hospital and would receive no information about Isabella's condition. (Id. at ¶¶ 32, 44.) Thereafter,

---

[1] In their Opposition to the Dakota County Defendants' Motion, Plaintiffs have acknowledged the Dakota County Attorney's Office is not an entity capable of being sued. (Doc. No. 70 at 2 n.1.) See also In re Scott Cty. Master Docket, 672 F. Supp. 1152, 1163 n.1 (D. Minn. 1987) (MacLaughlin, J.) (county attorney's office is not a legal entity subject to suit).

HCMC denied Isabella access to a telephone, prevented her from having any contact with Gherity, and "moved her from room to room randomly." (Id. ¶ 56.) The Amended Complaint alleges that in doing so, HCMC "acted in concert with" the Burnsville Police Department, which had "requested that HCMC assist it in preventing Gherity and [Isabella] from contacting each other." (Id. ¶ 58; see also id. ¶ 59 ("HCMC knew of Gherity's and [Isabella's] relationship . . . and wanted to assist BPD in acting against Gherity.").)

Meanwhile, authorities undertook an investigation into the cause of the fire. But according to Gherity, that investigation was aimed at charging him with a crime — despite it being "obvious" he was not responsible — rather than finding out how the fire had actually started. He alleges that he had previous encounters with the Burnsville Police Department, including an earlier arrest and prosecution for assault for which he was ultimately acquitted. (Id. ¶¶ 35-36.) He claims that the same officer involved in the earlier case (Defendant Max Yakovlev) also was involved in the investigation of the fire and told others that Gherity should be a suspect. (Id. ¶¶ 34-35, 37, 39, 45.) Ultimately, this biased investigation, according to Gherity, led another officer (Defendant Jeffrey Pfaff) to swear out a false "Statement of Probable Cause" that was submitted to the Dakota County Attorney's Office. (Id. ¶ 76.) The County Attorney's Office, after allegedly failing to "conduct a proper analysis or investigation of the facts or law of the case," then "recklessly or knowingly approved" a criminal complaint charging Gherity with first-degree assault and arson. (Id. ¶ 93.) He was arrested on April 2, 2014, but the charges against him were later dropped. (Id. ¶¶ 107, 118.)

On March 31, 2016, Gherity and Isabella commenced the instant action against Pfaff, Yakovlev, the City of Burnsville, the Dakota County Defendants, and HCMC, among others, alleging a host of claims under the United States Constitution and state law. The Dakota County Defendants and HCMC moved to dismiss, and Plaintiffs then filed an Amended Complaint slightly altering their allegations but not the nature of their claims.[2] The Dakota County Defendants and HCMC have now moved to dismiss a second time. Their Motions have been fully briefed and are ripe for disposition.

## STANDARD OF DECISION

A complaint will survive a motion to dismiss only if it includes "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007). A "formulaic recitation of the elements of a cause of action" will not suffice. Id. at 555; accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Nor will a complaint suffice if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555, 557). Instead, the plaintiff must set forth sufficient facts in his complaint to "nudge[] the[] claim[] across the line from conceivable to plausible." Twombly, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [party] has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). In reviewing a motion to dismiss, the Court "must accept a plaintiff's specific factual allegations as true but [need] not . . . accept . . . legal

---

[2] Plaintiffs did, however, drop an inexplicable claim under the Twelfth Amendment, which concerns the procedures for electing the President and Vice President.

conclusions." Brown v. Medtronic, Inc., 628 F.3d 451, 459 (8th Cir. 2010) (citing Twombly, 550 U.S. at 556).

## ANALYSIS

**I. HCMC**

Plaintiffs' claims against HCMC concern its alleged "interference" with their "associational rights" by preventing them from seeing or communicating with one another. (See Doc. No. 71 at 1-2.) The Supreme Court has recognized two forms of protected "freedom of association": first, as a tenet of individual liberty "central to our constitutional scheme," and second, for the purpose of engaging in expressive or other conduct such as "speech, assembly, petition for the redress of grievances, and the exercise of religion." Roberts v. U.S. Jaycees, 468 U.S. 609, 617-18 (1993). Plaintiffs have not made clear which form of free association HCMC allegedly violated here.

Regardless, assuming *arguendo* that Plaintiffs have asserted a constitutionally protected interest,[3] their claims against HCMC fail for a more fundamental reason. Plaintiffs have sued under 42 U.S.C. § 1983, the means through which they may press their claims. E.g., Henley v. Brown, 686 F.3d 634, 640 (8th Cir. 2012) (§ 1983 "serves

---

[3] Not all personal relationships merit constitutional protection from interference. Citing Wilson v. Taylor, 733 F.2d 1539, 1544 (11th Cir. 1984), abrogated on other grounds as recognized in Scala v. City of Winter Park, 116 F.3d 1396, 1402 n.4 (11th Cir. 1997), Plaintiffs argue that "boyfriend-girlfriend relationships" such as theirs "have been held to be constitutionally protected." (Doc. No. 71 at 6 n.1.) That is true. See also Christensen v. Cty. of Boone, 483 F.3d 454, 463 & n.4 (7th Cir. 2007) (*per curiam*); Anderson v. City of LaVergne, 371 F.3d 879, 882 (6th Cir. 2004). But this is not a universally accepted proposition. See, e.g., Cameron v. Seitz, 38 F.3d 264, 275 (6th Cir. 1994) (acknowledging Wilson, but "other circuit court cases strongly suggest that such a[] [dating] association is not a clearly [protected] constitutional right"); Isenbart v. Bd. of Cty. Comm'rs of Kit Carson Cty., No. 11-cv-3240, 2012 WL 4378269, at *5-6 (D. Colo. Sept. 25, 2012); Cummings v. Howell, No. 4:11CV400, 2012 WL 2512923, at *6 (E.D. Ark. June 29, 2012).

as a vehicle for vindicating federal rights elsewhere conferred by . . . the United States Constitution and federal statutes") (internal quotation marks and citations omitted). "Only state actors can be held liable under § 1983." Carlson v. Roetzel & Andress, 552 F.3d 648, 650 (8th Cir. 2008) (citation omitted). HCMC, as a subsidiary of Hennepin County, see Minn. Stat. § 383B.901, is a state actor for purposes of § 1983. See Doe v. Tsai, Civ. No. 08-1198, 2010 WL 2605970, at *13-14 (D. Minn. June 22, 2010) (Frank, J.) (addressing § 1983 claims against HCMC). But as a county entity, it may be liable only if the alleged violation of Plaintiffs' rights "resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." Atkinson v. City of Mountain View, 709 F.3d 1201, 1214 (8th Cir. 2013) (citations omitted); accord Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690-91 (1978). And it is here the claims falter.

While Plaintiffs need not "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss," Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 591 (8th Cir. 2004), they must still "allege *facts* which would support the [conclusion] an unconstitutional policy or custom" existed, Doe ex rel. Doe v. Sch. Dist. of Norfolk, 340 F.3d 605, 614 (8th Cir. 2003) (emphasis added). They simply have not done so. Indeed, they have seized on a single incident, arguing "[t]he open and obvious improprieties" of the hospital's conduct "lead to an inference that such was the result of HCMC custom, de facto policy, knowledge, intent, bad faith and/or malice." (Am. Compl. ¶ 67.) This conclusory allegation simply will not suffice. See, e.g., Triemert v. Washington Cty., Civ. No. 13-1312, 2013 WL 6729260, at *12 (D. Minn.

Dec. 19, 2013) (Schiltz, J., adopting Report & Recommendation of Graham, M.J.) (plaintiff's "vague and conclusory allegations that his injuries were caused by some unidentified unconstitutional policies, customs or practices is not sufficient to state a Monell claim"), aff'd, 571 F. App'x 509 (8th Cir. 2014) (*per curiam*); D.B. v. Hargett, Civ. No. 13-2781, 2014 WL 1371200, at *8 (D. Minn. Apr. 8, 2014) (Davis, C.J., adopting Report & Recommendation of Brisbois, M.J.). As in Iqbal, Plaintiffs offer only "threadbare recitals of the elements" of a Monell claim "supported by mere conclusory statements, [which] do not suffice." 556 U.S. at 678.[4]

Perhaps recognizing this, Plaintiffs fall back on an allegation that HCMC employees were improperly *trained*. (Doc. No. 71 at 6-9.) To be sure, a failure to adequately train employees can lead to Monell liability, if inadequate training practices were adopted with deliberate indifference to the rights of others. See City of Canton v. Harris, 489 U.S. 378, 388 (1989). But for the reasons already stated, Plaintiffs have failed to allege any *facts* suggesting inadequate training with deliberate indifference, arguing only in conclusory fashion that the single complained-of incident somehow "show[s] HCMC staff were not properly trained or supervised." (Am. Compl. ¶ 66.) See Ulrich v. Pope Cty., 715 F.3d 1054, 1060 (8th Cir. 2013) ("[Plaintiff] further fails to

---

[4] Moreover, the Court notes that Plaintiffs originally alleged HCMC had been advised that Gherity might have caused Isabella's injuries. (Compl. ¶ 50.) It would be a startling proposition indeed for a hospital, treating a patient it had been told was injured by a third party, to be unable to prevent that third party from having contact with the patient due to "freedom of association." See also K.L. v. Riverside Med. Ctr., 524 N.W.2d 300, 302 (Minn. Ct. App. 1994) (hospitals have duty to protect patients from third parties whose wrongful acts can be reasonably anticipated). The fact that Plaintiffs omitted this allegation from their Amended Complaint suggests they have played fast and loose in an attempt to stave off dismissal.

provide facts in his complaint to support his assertion that [Defendant] adopted deficient supervision and training practices with deliberate indifference to the constitutional rights of others, and that these training practices were the product of the [Defendant]'s deliberate and conscious choices."). Simply put, "[a] *pattern* of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train," Connick v. Thompson, 563 U.S. 51, 62 (2011) (emphasis added), which the Amended Complaint simply has not alleged.[5]

Finally, Plaintiffs also allege that HCMC conspired with Burnsville officers to deprive them of their associational rights. As the freedom-of-association claim fails, so too does the conspiracy claim. See, e.g., Robbins v. Becker, 794 F.3d 988, 997 (8th Cir. 2015) ("Absent a constitutional violation, there is no actionable conspiracy claim.") (internal quotation marks and citations omitted); Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999) ("[T]he plaintiff is . . . required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim."). In any event, the conspiracy claim fails because Plaintiffs have not provided the factual detail

---

[5] Plaintiffs cite City of Canton and Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397 (1997), to argue that a single incident can support a failure-to-train claim. True, these cases left open that possibility. See, e.g., Szabla v. City of Brooklyn Park, 486 F.3d 385, 393 (8th Cir. 2007) (*en banc*) (recognizing the Supreme Court "has not foreclosed the possibility that a single violation of constitutional rights could trigger municipal liability" in the failure-to-train context). But as the Supreme Court more recently noted in Connick, such circumstances are rare, 563 U.S. at 64, and the bare-bones Amended Complaint here does not suggest this is such a case. Nor may Plaintiffs put the cart before the horse by pleading a failure-to-train claim and then hoping to flesh out its basis in discovery. See Harris v. Hammon, 914 F. Supp. 2d 1026, 1033 (D. Minn. Dec. 19, 2012) (Doty, J., adopting Report & Recommendation of Keyes, M.J.) ("[I]f this were true, then any plaintiff who alleged that his constitutional rights were violated in an incident involving the police would be entitled, without more, to use the discovery process to see if he could put together a failure to train claim.").

necessary to support such a claim, see, e.g., Palesch v. Mo. Comm'n on Human Rights, 233 F.3d 560, 570 (8th Cir. 2000) ("[The plaintiff's] conclusory allegations that the individual defendants were out to get her . . . will not suffice."); Magee v. Trs. of Hamline Univ., 957 F. Supp. 2d 1047, 1058 (D. Minn. 2013) (Tunheim, J.) (adopting Report & Recommendation of Boylan, C.M.J.) ("Mere allusion to . . . a conspiracy is insufficient; the conspiracy, or meeting of the minds, must be pleaded with specificity and factual support."), nor any facts supporting an inference that HCMC has a policy or custom of conspiring to deprive individuals of their constitutional rights, see Helvey v. City of Maplewood, 154 F.3d 841, 845 (8th Cir. 1998).

## II. The Dakota County Defendants

Plaintiffs asserted several claims against the Dakota County Defendants in their Amended Complaint, but they have narrowed their claims in their Motion papers, focusing only on a Monell failure-to-train claim. Specifically, they argue that it is "the policy and procedure of the Dakota [County] Defendants not to train and supervise its [*sic*] attorneys with respect to charging and incarceration decisions." (Doc. No. 70 at 8.) That inadequate training, argue Plaintiffs, led to the approval of criminal charges against Gherity without a "proper review," which (ostensibly) would have indicated that Gherity was innocent. (Id. at 8-9.) There are several obvious problems with this claim.

*First*, even accepting this theory as tenable, the allegations do not implicate Isabella at all. There is no indication in the Amended Complaint that she was charged with a crime, involved in any type of criminal investigation, or incarcerated. Hence, any claim she may be asserting against the Dakota County Defendants fails *ab initio*.

*Second*, as with the claims against HCMC, Plaintiffs have not pleaded sufficient facts to support a failure-to-train theory. Indeed, Plaintiffs' allegations are on all-fours with those deemed inadequate in Connick. There, the plaintiff sought to impose liability on a municipality after a prosecutor failed to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963), resulting in his conviction and imprisonment for more than 14 years. The plaintiff argued that the undisclosed evidence resulted from the District Attorney's Office's failure to train prosecutors on their Brady obligations. But because there was no evidence of "a pattern of similar Brady violations," the high Court concluded the plaintiff could not make out a constitutional claim. Connick, 563 U.S. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."). And, the Court concluded, the allegations in Connick did not fall within the narrow range of cases for which a single incident could result in liability. Id. at 64. The undersigned perceives no principled reason to reach a different result here.[6]

*Third*, Plaintiffs' claim is barred by absolute prosecutorial immunity. The decision by prosecutors in the County Attorney's Office to review the evidence and initiate criminal proceedings, even if undertaken with malice, is unconditionally protected. See, e.g., Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976); Reasonover v. St.

---

[6] Plaintiffs suggest they need not *plead* a pattern of violations, but must only *prove* such a pattern in order to prevail in the case. (Doc. No. 70 at 12.) To allow a single incident to proceed through litigation on a failure-to-train theory, however, would allow Plaintiffs to plead first and ask questions later. This is not the law. Harris v. Hammon, 914 F. Supp. 2d 1026, 1033 (D. Minn. Dec. 19, 2012) (Doty, J., adopting Report & Recommendation of Keyes, M.J.).

Louis Cty., 447 F.3d 569, 580 (8th Cir. 2006) ("Immunity is not defeated by allegations of malice, vindictiveness, or self-interest."); Anderson v. Larson, 327 F.3d 762, 768-69 (8th Cir. 2003); Brodnicki v. City of Omaha, 75 F.3d 1261, 1268 (8th Cir. 1996). There is no allegation here that the County Attorney or anyone in the County Attorney's Office fabricated evidence — Plaintiffs lodge that claim only against Burnsville police officers.[7] Rather, Plaintiffs' "beef," so to speak, is with the County Attorney's Office's failure to recognize the "fabricated" evidence presented to it before pursuing criminal charges. (See Am. Compl. ¶¶ 93-97.) But "[t]he decisions relating to the initiation and dismissal of cases are at the very heart of a prosecutor's function as an advocate for the state, and absolute immunity thus attaches to those decisions." Brodnicki, 75 F.3d at 1268. And this immunity extends to Dakota County, as well. See Van de Kamp v. Goldstein, 555 U.S. 335, 348-49 (2009).

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that the Dakota County Defendants' Motion to Dismiss (Doc. No. 58) and HCMC's Motion to Dismiss (Doc. No. 63) are **GRANTED**, and all claims against these Defendants are **DISMISSED WITH PREJUDICE**.

Dated: November 1, 2016            s/Richard H. Kyle
                                   RICHARD H. KYLE
                                   United States District Judge

---

[7] Not that such an allegation would alter the outcome. Reasonover, 447 F.3d at 580 (prosecutors who "knowingly presented false, misleading or perjured testimony, or . . . withheld or suppressed exculpatory evidence, . . . are absolutely immune from suit").